**ZESTEE FOODS, INCORPORATED,**
a corporation, Plaintiff,

v.

**FRUEHAUF CORPORATION, a**
corporation, Defendant.

No. 72-C-332.

United States District Court,
N. D. Oklahoma,
Civil Division.

Dec. 27, 1974.

J. C. Baker, Tulsa, Okl., for plaintiff.

J. L. Morehead, Tulsa, Okl., for defendant.

MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff brought this antitrust action seeking treble damages under the provisions of Section 4 (15 U.S.C. § 15) of the Clayton Act alleging that Defendant made an illegal brokerage payment in violation of Section 2(c) [15 U.S.C. § 13(c)] of the Robinson-Patman Act. Plaintiff asserts it was damaged by such alleged violation of an antitrust law. The payment in question involved an "overallowance" paid by Defendant in the purchase of a number of used trailer vans, which purchase was made in connection with the sale by Defendant of several new trailers to a leasing company. The new trailers were purchased by the leasing company for use by Plaintiff. The used trailers upon which the "overallowance" was made were those previously used by Plaintiff and in ef-

fect were accepted as "tradeins" by Defendant.

The new trailers were financed through Defendant by the leasing company and Plaintiff guaranteed the security agreements taken by Defendant. Defendant herein asserts as a Counterclaim the amount ultimately arising as deficiencies under the guaranties made by Plaintiff after the leasing company's successor became bankrupt and Defendant took possession of the secured property and disposed of same.

The case was tried before the Court on August 26, 1974. The evidence shows the facts to exist as set out hereafter.

Plaintiff Zestee in 1968 operated a fleet of truck tractor-trailer units in its food processing business in Oklahoma City, Oklahoma. At such time its President was Travis Wilkes, and its Vice-President was Jerry L. Wilkes. Jerry Wilkes personally leased some equipment to Plaintiff to include some trailer units and some were apparently leased from an entity known as W–H Trucking Company, which was at that time a partnership between Jerry Wilkes and Wayne Henson, shown to be the truck dispatcher and an employee of Plaintiff. On August 12, 1968, Plaintiff entered into a Truck Lease Service Agreement with Mathews Truck Leasing, Inc. (Mathews Leasing). This agreement was negotiated by H. E. "Gene" Mathews, the President of Mathews Leasing. Mathews testified by deposition that he negotiated with Jerry Wilkes, Travis Wilkes, and their father prior to closing the deal. All of them approved of the agreement. The mechanics of the transaction were thereafter primarily handled with Jerry Wilkes, who was in charge of transportation for Plaintiff. It is noted that the agreement of August 12, 1968 was signed by Jerry Wilkes and was witnessed by Travis Wilkes.

As part of the truck leasing agreement, Mathews Leasing agreed it would purchase the old equipment Plaintiff had been using. This appears to be a common practice in the truck leasing business. Included in the old equipment were eleven trailers which Mathews Leasing agreed to purchase for a price purportedly representing the undepreciated book value of said trailers. (Truck-tractor units were involved also, but same have been basically disregarded in this opinion because the issues herein relate to sales of trailers only.)

Mathews Leasing thereafter entered into an agreement with Defendant Fruehauf to purchase fifteen (15) new trailers for lease to Plaintiff. Included in the deal between Mathews Leasing and Defendant was an agreement that Defendant would purchase the eleven old trailers for the total sum of $63,302.72. This figure included an "over allowance" in the total amount of $37,636.80. An "over allowance" is an amount allowed on equipment which is accepted as a trade-in which is in excess of the appraised value of the equipment. The Defendant's Sales Order dated September 3, 1968 shows that the total selling price for the fifteen new units included the total amount paid as "over allowance".

Six of the new trailers were delivered to Mathews Leasing on November 1, 1968 and the Security Agreement covering same was executed by Mathews Leasing and guaranteed by Plaintiff. Nine more trailers were delivered to Mathews Leasing on December 1, 1968 and the Security Agreement and Guaranty executed. Five of the used trailers were delivered to Defendant on November 1, 1968 and its check payable to W. H. Trucking Company was issued on said date in the amount of $31,120.64. The "over allowance" on this purchase was noted in Defendant's records to be $15,054.72. This check was delivered to Jerry Wilkes by Mathews. The remaining six used trailers were received by Defendant about December 6, 1968 and its check in the amount of $32,382.08 was issued to Zestee Foods, Inc. and Mathews Leasing Co. The "over allowance" noted in Defendant's records from this purchase was $22,582.08. The check payable to Plaintiff was endorsed

"Zestee Foods Wayne Henson", and then deposited by Mathews Leasing Co. Mathews later paid this amount to Jerry Wilkes. Mathews Leasing did not take title to any of the used vehicles involved, but delivered them in blank to Defendant. It is noted that the titles to the eleven vehicles show that nine of them were in the name of Zestee Foods, Inc. and two were in the name of Leasing Associates, Inc., but had been assigned to W. H. Trucking, Co. The evidence indicates that none of the money paid by Defendant for the used trailers to include the "over allowance" included in such payments was received by Plaintiff. It appears that such money was received either directly or indirectly by Plaintiff's former Vice-President, Jerry Wilkes.

■■ Plaintiff's theory for recovery is that the "over allowance" was a commercial bribe paid to Jerry Wilkes, its former Vice-President, and thus qualifies as an unlawful payment of other compensation under Section 2(c). Plaintiff contends it was damaged by the fact that the price of the trailers was inflated to include the amount of the over allowance paid and that this ultimately increased the costs made under the equipment lease.

The critical issue to be determined by the Court as to Plaintiff's action is whether the "over allowance" payment constitutes a violation of Section 2(c), 15 U.S.C. § 13(c) provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

Von Kalinowski, Antitrust Laws and Trade Regulations: § 33.01[2] sets out the elements of a Section 2(c) violation as follows:

"There are seven (sic) elements which, when proven demonstrate that an illegal brokerage payment has been made. Section 2(c) is violated when

(1) Any person

(2) engaged in commerce, and in the course of commerce,

(3) pays to or receives from,

(4) the other party or his agent or representative,

(5) anything of value, as a commission, brokerage or discount or allowance in lieu of brokerage,

(6) in connection with a sale or purchase of goods, wares, or merchandise."

The complex fact situation involved herein does not indicate the presence or absence of all the elements designated by the textwriters, without an in depth study of at least two of the elements listed. It must be determined who were the parties ( (4), *supra*) to the sales transaction involved, and whether the payment in question constituted "other compensation" ( (5), *supra*) as covered by Section 2(c).

Defendant contends that it sold the new trailers to Mathews Leasing and bought the old trailers from Mathews Leasing and Plaintiff Zestee was not a party to the transaction. Thus (4), *supra*, would be missing under this contention of Defendant.

H. E. Mathews testified by deposition. On pages 35 and 36 he stated:

"But I did not and I had no interest in finding out what I could buy this equipment for without a trade-in, because I had trade-ins. It become (sic) my responsibility to get Zestee Foods every nickel I could out of their used equipment. If I could have got him (sic) more than what he (sic) said his (sic) book value was, then I would

have got him (sic) more money. This would have made me look a little bit better, so long as I was competitive in the initial cost.

\* \* \* \* \* \*

"And I feel like from a leasing representative for Zestee Food, I did them a whale of a job. I kept their old used equipment. I think I did a good job on it."

The sales transaction involved both the sale of the new trailers and the purchase of the used units. The evidence indicates that Mathews was acting as agent for Zestee in the sale of the used units purchased by Defendant. Both Defendant's branch manager and its former salesman who handled the transaction testified that the sale of the new units and the purchase of the used units were all part of one transaction. The fact that Mathews Leasing never took title to the used vehicles in question further supports an inference that Mathews was acting as agent for Zestee (record title owner of most of the units) and/or Jerry Wilkes in the sale of the used trailers. The fact that Defendant required Zestee, as lessee of the new trailers to guarantee the Security Agreement on the new trailers further shows that Defendant considered Plaintiff to be involved as a party to the transaction. The fact that Defendant only dealt with Mathews is not enough to show that only Defendant Fruehauf and Mathews Leasing were parties to the transaction. The fact that Defendant issued its checks to purchase the used equipment to W. H. Trucking and Zestee Foods at the direction of Mathews further supports the inference that Mathews was acting as agent for Zestee and/or Jerry Wilkes in the transaction. The Court finds that Plaintiff Zestee was sufficiently identified as a party involved in the sales transaction of September 3, 1968 in which Defendant sold 15 new trailers to Mathews Leasing and in which Defendant purchased the used trailers for which it paid the "over allowance" in question herein. Element (4), *supra,* is therefore satisfied.

Defendant further contends however that Section 2(c) relates only to payments classified as a commission or brokerage and that no commission or brokerage was paid in the transaction involved herein. Plaintiff responds that the "over allowance" was a "commercial bribe" included in the "other compensation" provision set out in Section 2(c), *supra.*

In the case of Federal Trade Com. v. Henry Broch & Co., 363 U.S. 166, 80 S. Ct. 1158, 4 L.Ed.2d 1124 (1960), the Court considered the purpose and background of Section 2(c) and stated in footnote 6, 363 U.S. at 169, 80 S.Ct. at 1161 as follows:

"And although not mentioned in the Committee Reports, the debates on the bill show clearly that § 2(c) was intended to proscribe other practices such as the 'bribing' of a seller's broker by the buyer. See 80 Cong.Rec. 7759–7760, 8111–8112."

In Rangen, Inc. v. Sterling Nelson & Sons, 351 F.2d 851 (Ninth Cir. 1965), the Court considered whether the act by a competitor of Plaintiff's in bribing a State's purchasing agent was a violation of Section 2(c). The Court in its decision considered the Supreme Court's discussion in *Broch, supra,* and reached its conclusion as follows:

"We conclude that section 2(c) is not directed solely against price discrimination through rebates described as brokerage. Given fulfillment of the express requirements of subsection 2(c), that subsection also encompasses cases of commercial bribery tending to undermine the fiduciary relationship between a buyer and its agent, representative, or other intermediary in a transaction involving the sale or purchase of goods, wares or merchandise."

In Fitch v. Kentucky-Tennessee Light & Power Co., 136 F.2d 12 (Sixth Cir. 1943) the Court considered the application of Section 2(c), *supra,* as follows:

"On the first question—whether the statute applies where an agent of the

buyer accepts commissions from the seller on the purchase of goods, and retains them for his own benefit—the statute [Title 15, Sec. 13(c), U.S.C.A.] provides:

The Court reached the following conclusion after an extended discussion:

"With regard to the acceptance of commissions by an agent of the buyer, it is not merely an acceptance of commissions by the agent on behalf of his principal, that is unlawful; it is the acceptance of commissions from a seller by an agent of the buyer in connection with the sale of merchandise in the course of interstate commerce, that is also envisaged by the statute. In this case, payment of commissions by the Coal Company to Fitch in connection with the sale of the coal was unlawful and in direct contravention of the Act."

The Plaintiff herein relies on the *Fitch* opinion contending that the "over allowance" payment in the instant case is a commercial bribe, and that its damages in the instant case are the same as those suffered by the Light & Power Company in *Fitch* wherein Plaintiff contends the price of the coal purchased was inflated to cover the amount of commissions paid. But *Fitch* clearly involved the payment of a *commission* and it was not necessary in that case to resort to the "other compensation" provision of the Act.

The rationale applied by this Court in finding that Zestee was sufficiently identified as a party involved in the transaction is that Mathews was acting as agent for Zestee in disposing of the old equipment and thus in obtaining payment therefor by Defendant including the "over allowance" related thereto which is involved herein. It is this agency relationship which identified Zestee as a party involved in the transaction. Not to buy new trailers. Mathews bought the new trailers. But to guarantee this purchase and to dispose of the old units. If the money for the old units had been received by Zestee, it could not complain of the "over allowance" paid by Defendant Fruehauf for it would have obtained the benefit of the "over allowance". The allegation by Plaintiff that the "over allowance" constituted payment of a "commercial bribe" is based on the proposition that such payment was received by its Vice-President, Jerry Wilkes. This payment ultimately received by Wilkes was not made by Defendant Fruehauf to Wilkes, but was made only by direction by Mathews, acting as agent for Zestee for the purpose of disposing of the old equipment. The ultimate situation could be in the nature of a conversion by Plaintiff's officer. But the evidence is not clear herein as to who actually had the ownership of the old units between Zestee and Jerry Wilkes (and possibly W. H. Trucking) and who would therefore be entitled to receive the proceeds from the sale of same. This Court takes judicial knowledge of the fact that in Case Number 73–C–15 of this Court Plaintiff has litigated this exact issue in an action on an employee's fidelity bond. The bonding company in such action joined Jerry Wilkes as a Third-Party Defendant. The Honorable Luther Bohanon rendered a decision and Judgment in such action finding that Plaintiff was entitled to recover for acts of conversion committed by Jerry Wilkes. The Fruehauf transaction was included in this litigation. Before the Judgment became final, the parties appear to have reached some sort of a settlement agreement which agreement included the setting aside of the Court's findings. Plaintiff has had its day in Court as to the diversion of these funds alleged to have been affected by its Vice-President Jerry Wilkes. Thus, Plaintiff seeks recovery for the same loss from both Wilkes and Fruehauf.

In the instant case, the payment of the "over allowance" by Defendant is not in the nature of a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof as

prohibited by Section 2(c). It was not intended to be a "bribe" paid to Jerry Wilkes. Fruehauf simply allowed its buyer more for the old traded-in units than they were worth on the open market and actually bought the same rather than effecting a credit for the same at the request of Mathews, Plaintiff's agent regarding the old units. It is not believed that section 2(c) was intended to prevent a seller from allowing a buyer more for a trade-in than it may be worth. There is no evidence to show that payment of the "over allowance" induced Mathews to purchase Fruehauf trailers. He states he gave the business to Fruehauf because he (Mathews) preferred their products. As Mathews has to be Zestee's agent to make a Section 2(c) case for Plaintiff, this Court will not be concerned with where the money for the trade-ins ultimately went. Fruehauf had no interest here. Where the money went was arranged by Zestee's agent Mathews. If the money went to the wrong recipient this is a defalcation matter between Zestee and its agents or officers which was the subject matter of Judge Bohanon's case. It is the finding of the Court that a Section 2(c) violation has not occurred as the transaction involved herein did not include the payment or receipt of a commission, brokerage or other compensation as proscribed by the Act. Thus Plaintiff is not entitled to recover on its claim asserted herein against Defendant.

The parties agreed at the time of trial that the amount claimed by Defendant in its Counterclaim in the amount of $25,601.24 is reasonable and that Defendant is entitled to recover such amount from Plaintiff. The Court thus finds that Defendant should have judgment for $25,601.24. Counsel for Defendant will prepare an appropriate Judgment based on the foregoing and submit the same to Plaintiff's counsel for approval and then to the Court for signature and entry herein.

It is so ordered this 27th day of December, 1974.