**METRIX WAREHOUSE, INC.,**
**Respondent,**

v.

**DAIMLER–BENZ**
**AKTIENGESELLSCHAFT,**
**Defendant,**

and

**Mercedes-Benz of North America,**
**Inc., Petitioner.**

No. 82–2033.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1983.

Decided Aug. 25, 1983.

---

Paul Walter, Baltimore, Md. (William C. Sammons, Thomas M. Wilson, III, Tydings & Rosenberg, Baltimore, Md., Donald J. Zoeller, David A. Vaughan, Robert A. Cantor, Mudge, Rose, Guthrie & Alexander, New York City, Allan G. Freund, Wayne H. Samson, Montvale, N.J., on brief), for Daimler-Benz Aktiengesellschaft.

H. Kenneth Kudon, Los Angeles, Cal. (T.J. Pantaleo, Eric S. Engel, Pantaleo & Kudon, Chartered, Los Angeles, Cal., Barry L. Steelman, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, Md., David M. Sapiro, Sapiro & Gottlieb, East Brunswick, N.J., on brief), for Metrix Warehouse, Inc.

Before SPROUSE, ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This matter is before us upon a certification under 28 U.S.C. 1292(b). The sole issue is whether section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c),[1] proscribes an incentive program in which appellee Metrix Warehouse, Inc. (Metrix) makes payments to parts managers of Mercedes-Benz dealerships based on the number of Metrix products purchased by the parts managers' employers. The district court denied the motion of appellant Mercedes-Benz of North America (MBNA) for partial summary judgment. The court found that further inquiry was necessary because, instead of having an anticompetitive impact, the Metrix program seemed to have the effect of increasing competition. Section 2(c) does not address competitive effect and, under the clear language of the statute and the undisputed facts of the case, the incentive program constitutes a *prima facie* violation of section 2(c). We reverse the decision of the district court.

MBNA and Metrix are competitors in the sale of automobile parts to approximately 400 Mercedes-Benz dealers in the United States. MBNA, the exclusive United States distributor of Mercedes-Benz automobiles, has granted franchises to these automobile dealers to sell Mercedes-Benz automobiles and replacement parts and to perform repairs and maintenance work. Metrix, which also sells parts to the Mercedes-Benz dealers for use in Mercedes-Benz automobiles, sued MBNA for alleged violations of the Sherman Antitrust Act. MBNA counterclaimed, alleging that Metrix was engaged in acts in violation of the Robinson-Patman Act.

Metrix does not contest the fact that its incentive program involves the awarding of points redeemable for either merchandise or cash or the payment of cash directly to the parts managers of the Mercedes-Benz dealers. These payments are based on a per-

---

1. Section 2(c) of the Robinson-Patman Act provides:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

centage of total parts purchased from Metrix. As consideration for the payments, the payees perform no services other than placing their employers' purchase orders with Metrix.

Between February 1974 and June 1980, Metrix paid at least $119,980.80 in cash and $394,551.53 in cash and/or merchandise to parts managers of Mercedes-Benz dealers for the placement of approximately $13,-000,000 in spare parts orders with Metrix. Payments are mailed monthly by Metrix to the parts managers at their home address. The value of the points is approximately 3½ % of the purchase price.

Metrix argues, and the district court found, that questions of fact remain whether the incentive program decreases competition. Nothing in the language of ·section 2(c), however, requires proof of an adverse effect on competition before a violation may be found where there is an admitted payment of a commission or other compensation to an agent of the purchaser. *Southgate Brokerage Co. v. FTC,* 150 F.2d 607 (4th Cir.1945), *cert. denied,* 326 U.S. 774, 66 S.Ct. 230, 90 L.Ed. 468 (1945); *Oliver Brothers v. FTC,* 102 F.2d 763 (4th Cir.1939). *See also FTC v. Simplicity Pattern Co.,* 360 U.S. 55, 65, 79 S.Ct. 1005, 1011–1012, 3 L.Ed.2d 1079 (1959) (dicta); *see also* n. 11 on page 67, 79 S.Ct. n. 11 on page 1013. Any change in the law to address the competitive effect of such compensation must be made by Congress and not by the courts. The decision of the district court is accordingly

REVERSED.