Sally **BRIDGES**, et al., Plaintiffs,

v.

**MacLEAN–STEVENS STUDIOS, INC.,** et al., Defendants.

No. Civ. 98–71–B.

United States District Court, D. Maine.

Dec. 17, 1998.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiffs, parents of school-age children, bring this antitrust action against Defendants MacLean–Stevens Studios, Inc., a photography studio which services the school portrait market, and its owners, Lawrence and Blair MacLean. Plaintiffs allege that Defendants engaged in commercial bribery in violation of 15 U.S.C. § 13(c) (1994) (Count I), price discrimination in violation of 15 U.S.C. § 13(a) (1994) (Count II), and a conspiracy to restrain trade in violation of 15 U.S.C. § 1 (1994) (Count III).[1] Plaintiffs seek treble damages pursuant to 15 U.S.C. § 15(a) (1994) and an order enjoining Defendants from continuing their pricing practices. Before the Court are Plaintiffs' Motion for Class Certification, Defendants' Motion for Summary Judgment on all Counts of Plaintiffs' Complaint, and Plaintiffs' Cross Motion for Summary Judgment on Count I.[2] For the reasons set forth below, Defendants' Motion for Summary Judgment on all Counts is GRANTED, and Plaintiffs' Cross Motion for Summary Judgment on Count I and Motion for Class Certification are DENIED.

## I. BACKGROUND

Defendant MacLean–Stevens Studios, Inc., is a New Hampshire corporation which offers student portrait services and products throughout Maine. Plaintiffs are parents of school-aged children who purchased portraits from Defendants according to a "commission price list," which sets forth prices charged to parents whose children attend schools which have entered into a particular contract with Defendants. This contract provides that the school will receive a commission of 20% of the price of the portrait packages sold in the school and designates Defendants as the exclusive providers of portraits on school property.[3] Prices on the commission price list

Jon Holder, Holder & Grover, Portland, ME, for plaintiffs.

John Hubbard Rich, III, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for defendants.

1. The original Complaint named five plaintiffs. On September 23, 1998, the Court granted Plaintiffs' Motion to Delete Three Proposed Named Representatives. The remaining plaintiffs are Sally Bridges and Tammy Brady.

2. Though captioned "Plaintiffs' Cross Motion for Summary Judgment on Counts I & II," Plaintiffs clarified at oral argument that the Cross Motion is for summary judgment on Count I only.

3. Plaintiffs emphasize the "exclusive" nature of the contracts between Defendants and the schools receiving commissions. The Court observes that it is difficult to distinguish exclusive contracts from non-exclusive contracts in this

are generally 20% higher than portrait prices charged to parents whose children attend schools which have not entered into such an agreement with Defendants. The nature and quality of the products offered for purchase by the parents in the two groups of schools is identical.

The decision to accept a commission from Defendants and enter into an exclusive relationship with them is made entirely by individual schools. If a school contracts with Defendants, the resulting commission goes to the school's general fund. If the school declines to contract, Defendants' savings on the commission expense are passed on to parents in the form of lower portrait prices. Before 1996, parents were not informed that the prices on the commission price list reflected the commission paid to their children's school. At no time, however, did a school's contract with Defendants obligate parents to purchase portraits from Defendants.

Whether they accept the commission and designate Defendants as the exclusive portrait providers or not, all schools provide some services to Defendants: school personnel schedule the photo sessions, provide and arrange space for the photo sessions, distribute the portrait packages to students, and collect payment from students in the elementary grades. For their part, Defendants provide a variety of products such as yearbook, team, and identification photos to all schools free of charge.

Defendants' practice of entering into exclusive dealing contracts with schools and paying a commission is not unusual in the school portrait industry. Most contracts, including Defendants', cover one year, but others may last as long as three years. Some of Defendants' competitors have paid commissions of up to 50%. In 1995–96, Defendants had 159 accounts with schools in Maine, 112 of which designated Defendants as their exclusive photographers and received commissions, and 49 of which did not.

In addition to Defendants' studio and other studios which take portraits on school property, numerous businesses in Maine offer portrait services off school grounds, including

Wal-mart and J.C. Penney. Plaintiffs Brady and Bridges are aware of these options and have purchased portraits of their children from such businesses on several occasions.

## II. DISCUSSION

Citing 15 U.S.C. § 13(c), Plaintiffs contend that Defendants' payment of commissions to schools in exchange for exclusive dealing contracts constitutes "commercial bribery" of the schools which act as Plaintiffs' intermediaries. Plaintiffs also allege that the different prices charged to parents for exactly the same product lessens competition and therefore constitutes price discrimination within the meaning of 15 U.S.C. § 13(a). Finally, Plaintiffs assert that Defendants conspired with schools receiving commissions to restrain trade in violation of 15 U.S.C. § 1. Plaintiffs seek relief for themselves and all similarly situated individuals and move the Court to certify a class of all persons in Maine, New Hampshire, and Massachusetts who purchased portraits based on Defendants' commission price list. In response to Defendants' Motion for Summary Judgment on all Counts, Plaintiffs filed a Cross Motion for Summary Judgment on the commercial bribery claim.

Since the Court's disposition of the Motion and Cross Motion for Summary Judgment will impact the Plaintiffs' Motion for Class Certification, the Court first will address summary judgment.

### A. Summary Judgment

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st

context since it appears that in *all* schools, student portraits are taken once per year and only

one studio takes portraits in each school in any given year.

Cir.1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

### 1. 15 U.S.C. § 13(c)—Commercial Bribery

15 U.S.C. § 13(c), also known as § 2(c) of the Robinson–Patman Act, prohibits the payment of commissions to buyers, sellers, or their agents, except for services rendered. Specifically, the statute provides:

It shall be unlawful for any person engaged in commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

15 U.S.C. § 13(c) (1994).

Though primarily aimed at "dummy brokerages,"[4] Congress also contemplated that the statute might play a role in safeguarding the fiduciary relationship between a buyer or seller and an agent by regulating a party who induces an agent to act contrary to the interests of his principal. *See* S.Rep. No. 1502, 74th Cong., 2d Sess. 7 (1936) ("to protect those who deal in the streams of commerce against breaches of faith in its relations of trust, is to foster confidence in its processes and promote its wholesomeness and volume"). Indeed, the Supreme Court has observed in dictum that the legislative history of the Robinson–Patman Act supports the proposition that § 13(c) may "proscribe other practices such as the 'bribing' of a seller's broker by the buyer." *FTC v. Henry Broch & Co.,* 363 U.S. 166, 168–69, 80 S.Ct. 1158, 4 L.Ed.2d 1124 (1960). Since its enactment, however, only four jurisdictions have found so-called "commercial bribery" actionable under § 13(c).[5] *See Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052, 1066 (3rd Cir.1988), *aff'd on other grounds,* 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990) (concluding "as a general matter commercial bribery is actionable under [§ 13(c) ]"); *Grace v. E.J. Kozin Co.,* 538 F.2d 170, 173 (7th Cir.1976) (finding district court correctly concluded that seller's payment of commissions to buyer's agent constituted commercial bribery); *Rangen, Inc. v. Sterling Nelson & Sons, Inc.,* 351 F.2d 851, 857 (9th Cir.1965), *cert. denied,* 383 U.S. 936, 86 S.Ct. 1067, 15 L.Ed.2d 853 (1966) (upholding district court's entry of judgment for plaintiff where plaintiff's competitor bribed state official who had influence over state purchasing decisions); *Fitch v. Kentucky–Tennessee Light & Power,* 136 F.2d 12, 14 (6th Cir.1943) (finding commercial bribery where buyer's president accepted bribes from seller). *But see Seaboard Supply Co. v. Congoleum Corp.,* 770 F.2d 367, 371–72 (3rd Cir.1985) (questioning whether Congress intended to include commercial bribery within ambit of § 13(c)). The First Circuit has yet

---

4. A large buyer demanding that a seller pay a fee to a designated broker who then gives the money to the buyer is an example of a "dummy brokerage." *See Stephen Jay Photography, Ltd. v. Olan Mills, Inc.,* 903 F.2d 988, 992 n. 6 (4th Cir.1990).

5. 

"Commercial bribery" is defined as "[t]he advantage which one competitor secures over fellow competitors by secret and corrupt dealing with employees or agents of prospective purchasers." BLACK'S LAW DICTIONARY 173 (5th ed.1979). Commercial bribery within the reach of [§ 13(c) ] takes place when a person who purports to be an agent or fiduciary for one party to a transaction receives, for his or her own account and contrary to the interests of his or her principal, commissions or value from the other party to the transactions. 3 Earl W. Kintner & Joseph P. Bauer, FEDERAL ANTITRUST LAW § 26.12, at 528 (1983).

Keller W. Allen & Meriwether D. Williams, *Commercial Bribery, Antitrust Injury and Section 2(c) of the Robinson–Patman Anti–Discrimination Act,* 26 Gonz.L.Rev. 167 (1990/1991).

to squarely address the issue.[6] Even assuming that such a cause of action is cognizable in this Circuit, however, Plaintiffs' claim that Defendants committed commercial bribery by paying commissions to schools which acted as intermediaries of parents fails as a matter of law.[7]

As an initial matter, the Court notes that there are no genuine issues as to any facts material to Plaintiffs' claim. The parties do not dispute that Defendants paid commissions to certain schools, or that Defendants contracted with those schools to be the exclusive providers of student portraits on school grounds. The parties also acknowledge that all schools, whether or not they receive commissions, provide services to Defendants such as scheduling the photo sessions, arranging the space, and distributing the portrait packages. Likewise, there is no question that Defendants provide yearbook photos, identification cards, and various other products directly to schools. Plaintiffs do not contend that they were obligated by the schools to purchase photos of their children from Defendants, nor do they dispute that

---

6. One early First Circuit case discussing 15 U.S.C. § 13(c) indicates that any commission paid to an agent of one party by the other party is a violation of the statute, even if the payment is for services rendered. *See Quality Bakers of America v. FTC*, 114 F.2d 393, 398 (1st Cir.1940) ("It is plain enough that the paragraph, taken as a whole, is framed to prohibit the payment of brokerage in any guise by one party to the other, or the other's agent, at the same time expressly recognizing and saving the right of either party to pay his own agent for services rendered in connection with the sale or purchase"). Neither party has cited *Quality Bakers*, however, and the Court finds that the case does not reflect the modern interpretation of the law, which is that a party may pay a commission to the other party's agent as long as it is for services rendered by that agent to the party paying the commission. *See Rangen, Inc.*, 351 F.2d at 859 (noting that "emasculation of the services rendered exception [found in *Quality Bakers* ] has been criticized as unduly hindering legitimate brokerage").

7. Many courts have found that no competitive injury is necessary to establish a violation of 15 U.S.C. § 13(c). *See FTC v. Simplicity Pattern Co.*, 360 U.S. 55, 65, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959) (proscriptions of [13(c) ] are "absolute" and do not require showing of competitive injury); *Metrix Warehouse, Inc. v. Daimler–Benz Aktiengesellschaft*, 716 F.2d 245, 247 (4th Cir. 1983) ("nothing in the language of [13(c) ] . . . requires proof of an adverse effect on competition before a violation may be found"); *Environmental Tectonics*, 847 F.2d at 1066; *Rangen, Inc.*, 351 F.2d at 858; *In re American Honda Motor Co., Inc.*, 941 F.Supp. 528, 565 (D.Md. 1996); *Hansel 'N Gretel Brand, Inc. v. Savitsky*, No. 94 Civ. 4027, 1997 WL 543088, at *8 (S.D.N.Y. Sept.3, 1997).

Courts are divided, however, on whether a competitive injury is necessary to confer standing on a private party asserting a violation under 15 U.S.C. § 13(c) as required by 15 U.S.C. § 15(a) which provides a private right of action for "any person . . . injured by reason of anything forbidden in the antitrust laws." *See Environmental Tectonics*, 847 F.2d at 1066 ("A private plaintiff does not have to prove price discrimination to recover for a violation of [§ 13(c) ], but the plaintiff must still meet the standing requirements to proceed"); *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 270–72 (5th Cir. 1979) ("Recovery and damages under the antitrust law is available to those who have been directly injured by the lessening of competition and is withheld from those who seek the windfall of treble damages because of incidental harm"); *Federal Paper Bd. Co. v. Amata*, 693 F.Supp. 1376, 1389 (D.Conn.1988) (finding buyer had no standing to assert commercial bribery claim where only injury was that buyer paid higher price for goods than it otherwise would have); *Bunker Ramo Corp. v. Cywan*, 511 F.Supp. 531 (N.D.Ill.1981); *Hansel 'N Gretel Brand, Inc.*, 1997 WL 543088, at *8. *But see Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367 (3rd Cir. 1985) (omitting examination of standing in considering commercial bribery claim where plaintiff had not alleged antitrust injury); *Metrix Warehouse, Inc.*, 716 F.2d at 247; *Municipality of Anchorage v. Hitachi Cable, Ltd.*, 547 F.Supp. 633, 639 (D.Alaska 1982) ("when commercial bribes are paid to a company's employees to obtain contracts for the sale of goods, the company has standing to bring an action for damages under [§ 13(c) ]"); *Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902, 909 (E.D.N.Y. 1986).

Here, Plaintiffs allege that they were injured by paying a higher price for school photographs than they would have paid absent the commission. Though Plaintiffs were injured, it is not at all clear that the paying of higher prices by customers is the sort of injury to competition sufficient to establish a violation of § 13(c) or to confer standing to bring an antitrust action. *See Allen Pen Co., Inc. v. Springfield Photo Mount Co.*, 653 F.2d 17 (1st Cir.1981) (indicating that plaintiff must "establish injury because [§ 13(c) ] is designed to prevent violation of the basic [§ 13(a) ] price discrimination prohibition under different guise," but not discussing standing). Since neither party has raised or briefed these issues, and because the Court finds several substantive deficiencies in Plaintiffs' § 13(c) claim, the Court declines to decide these questions.

similar products and services were available from other vendors off school property.

Plaintiff argues that these facts make out a prima facie case of commercial bribery because schools, acting as intermediaries for parents, were paid commissions not for any service rendered by the schools, but in exchange for contracts designating Defendants as the schools' exclusive vendors. Defendants respond that Plaintiffs' claim fails because scheduling photo sessions, arranging space, and distributing portrait packages constitute valuable services rendered to Defendants by the schools receiving commissions. Moreover, Defendants contend that the schools are not agents or intermediaries of Plaintiffs because they had no power to bind Plaintiffs to purchase photographs. Defendants also assert that they are shielded from liability by the Nonprofit Institutions Act, 15 U.S.C. § 13c (1994).

■ The Court rejects Defendants' suggestion that commissions paid to schools are for services rendered by those schools. While all schools that engage Defendants render valuable services to them which enable Defendants to carry out their operations in the schools, only those schools which agree to retain Defendants as their exclusive vendors receive commissions. In light of this fact, the Court can only conclude that the commissions paid by Defendants were not "for services rendered," but for the exclusive agreement.[8] Nevertheless, the Court finds that Defendants are entitled to summary judgment because the Nonprofit Institution Act exempts them from liability for commercial bribery, and because a school receiving a commission from Defendants is not an "agent, representative, or other intermediary ... acting in fact for or in behalf, or [ ] subject to the direct or indirect control" of Plaintiffs within the meaning of § 13(c).

■ The Nonprofit Institutions Act has been applied to bar recovery in a case nearly identical to the one at bar. The Nonprofit Institutions Act provides:

> Nothing in sections 13 to 13b and 21a of this title, shall apply to purchases of their supplies for their own use by schools, colleges, universities, public libraries, churches, hospitals, and charitable institutions not operated for profits.

15 U.S.C. § 13c (1994). In *Burge v. Bryant Pub. Sch. Dist.*, 520 F.Supp. 328 (E.D.Ark. 1980), *aff'd on other grounds*, 658 F.2d 611 (8th Cir.1981), a school district engaged a photography studio to take student photographs for use by schools in the school yearbook and other school projects. The student photos also were available for sale by the studio to parents, and the school received a 10% commission based on the sales. The Court found that although the purchase by parents was a substantial non-school purpose of the photos, the use of the photographs by the schools was sufficient to bring the schools "within the purview" of the Act. *Id.* at 332. In finding the defendant photo studio as well as the school district shielded from commercial bribery liability, the Court explained that "if a particular purchase is exempt from the act, both the seller and the purchaser involved in that transaction must be exempt." *Id.* (citing *Logan Lanes, Inc. v. Brunswick Corp.*, 378 F.2d 212, 215 (9th Cir.1967)).

Here, as in *Burge*, the photographs are used by the schools for purposes which further the legitimate educational interests of the schools. *See id.; see also Logan Lanes, Inc. v. Brunswick Corp.*, 378 F.2d 212, 215 (9th Cir.1967) (finding Nonprofit Institution Act applied where bowling alley was used by students to fulfill University's physical education requirements). While the language of

8. The present case can be distinguished from *Burge v. Bryant Pub. Sch. Dist.*, 520 F.Supp. 328 (E.D.Ark.1980), *aff'd*, 658 F.2d 611 (8th Cir. 1981), in which district and appellate courts found that a photographer paid commissions to schools for services rendered to him by the schools. While the services rendered in *Burge* were similar to those provided by the schools in the case at bar, there was no evidence, as there is here, that schools which did not receive commissions also provided similar services.

Likewise, in *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 713 F.Supp. 937 (E.D.Va.1989), where the district court found that schools had rendered services to photography studios in exchange for commissions, there was no evidence concerning services provided by schools which did not receive commissions. The Fourth Circuit declined to address this issue on appeal. *See Stephen Jay Photography, Ltd. v. Olan Mills*, 903 F.2d 988 (4th Cir.1990).

the Act refers to "purchase" and although the photos were not technically "purchased" by the schools from Defendants for money, the schools did furnish consideration to Defendants in the form of exclusive contracts and the provision of scheduling and other services.[9] The Court therefore is satisfied that the Nonprofit Institution Act applies to exempt Defendants from liability for commercial bribery.

■ Even if the Nonprofit Institution Act was not applicable, however, Plaintiffs' claim still fails because they cannot demonstrate that the schools acted as the agents or intermediaries of Plaintiffs with regard to Plaintiffs' purchase of portraits from Defendants. "In the appellate decisions which have found commercial bribery within the ambit of [§ 13(c) ] the common thread has been the passing of illegal payments from seller to buyer or vice versa," that is, "when the seller-buyer line has been passed." *Seaboard Supply Co. v. Congoleum Corp.*, 770 F.2d 367, 372 (3rd Cir.1985). In situations involving a buyer, seller, and a third party, the seller-buyer line is crossed when a buyer or seller pays a commission to a third party acting as the agent or intermediary of the other party to the transaction. *See e.g., Grace v. Kozin Co.*, 538 F.2d 170, 173–74 (7th Cir.1976) (finding district court correctly concluded that seller's payment of commissions to buyer's agent constituted commercial bribery); *Rangen, Inc.*, 351 F.2d at 862 (upholding district court's entry of judgment for plaintiff where plaintiff's competitor bribed state official who had influence over state purchasing decisions); *Edison Elec. Inst. v. Henwood*, 832 F.Supp. 413, 419 (D.D.C.1993) (finding liability for commercial bribery where seller of computer services bribed agent of buyer); *Pharmacare v. Caremark*, 965 F.Supp. 1411, 1424 (D.Haw.1996) (holding plaintiff stated claim of commercial brib-

ery where doctors, acting as fiduciaries of patients, were bribed by plaintiff's competitor).

Only one Circuit has considered the issue of whether the seller-buyer line was crossed in the school portrait context. In *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 903 F.2d 988 (4th Cir.1990), a photography studio brought suit against a competitor studio claiming that it had committed commercial bribery by paying schools a portion of its profits from portrait sales to students. The Third Circuit held that the defendant studio had not violated § 13(c) because "the relationship between the students and the schools does not rise to one akin to that of agency or employment." *Id.* at 993. While the Court acknowledged the "special relationship of trust" between students and schools, it found dispositive the fact that the actions of the school did not obligate students to purchase photographs from the defendant. *See id.* The same is true in the present case: the schools' agreement with Defendants to accept commissions in exchange for designating Defendants as the exclusive photographers on school property did not bind Plaintiffs to purchase portraits from Defendants.[10] Nor were parents who declined to purchase from Defendants unable to obtain portraits of their children: other sources of similar products existed in the community; Plaintiffs were aware of these alternatives; and, in some cases, Plaintiffs availed themselves of these alternatives by purchasing portraits from vendors other than Defendants. Thus, the Court concludes that schools receiving commissions from Defendants were not agents or intermediaries of Plaintiffs with regard to their purchase of school portraits from Defendants, and therefore finds that Defendants are not liable for commercial bribery pursuant to 15 U.S.C. § 13(c).

9. The Court has not found, nor have the parties cited, one case which discusses the meaning of the term "purchase" in the Nonprofit Institutions Act. The interpretation adopted by the Court in the present case is consistent with the purpose of the Act to "permit institutions which are not in business for profit to operate as inexpensively as possible." *Logan Lanes, Inc.*, 378 F.2d at 216.

10. To the extent that "secrecy is an essential element" of a commercial bribery claim, *Stephen Jay Photography, Ltd. v. Olan Mills, Inc.*, 713 F.Supp. 937, 941 (E.D.Va.1989), the Court observes that Defendants have expressly notified parents of their arrangement with the schools receiving commissions since 1996. Even prior to 1996, however, Plaintiffs were not obligated to buy photos from Defendants at the commission price or any price.

## 2. 15 U.S.C. § 13(a)—Price Discrimination

In Count II of their Complaint, Plaintiffs allege that Defendants' practice of offering identical products for sale at different prices substantially lessens competition and tends to create a monopoly in the student portrait market thereby constituting price discrimination in violation of 15 U.S.C. § 13(a).[11] The statute provides:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States, ... and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered. ...

15 U.S.C. § 13(a) (1994).

■ There are two prerequisites to recovery under 15 U.S.C. § 13(a): 1) the prices complained of must be below an appropriate measure of the defendant's costs; and 2) the defendant must have a reasonable prospect of eventually recouping the investment it made in below-cost pricing by controlling or eliminating competition. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 223–24, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). As the Supreme Court has explained: "Evidence of below-cost pricing is not alone sufficient to permit an inference of probable recoupment and injury to competition. The determination requires an estimate of the alleged predation's cost and a close analysis of both the scheme alleged and the relevant market's structure and conditions." *Id.* at 226, 113 S.Ct. 2578.

■ In their Motion for Summary Judgment, Defendants contend that Plaintiffs have not demonstrated the existence of a genuine issue of material fact with regard to price discrimination and advance several arguments in support of their position that claim fails as a matter of law.

First, Defendants assert that Plaintiffs have failed to establish the elements of price discrimination. Specifically, Defendants invoke the statutory exception by arguing that the price differential between the commission and non-commission price lists reflects a difference in the cost of "sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered," 15 U.S.C. § 13(a), and therefore the prices on the non-commission price list are not "below an appropriate measure [of their] ... costs." *Tri–State Rubbish, Inc. v. Waste Management, Inc.,* 875 F.Supp. 8, 11, n. 4 (D.Me.1994). Defendants also contend that even if the non-commission prices are below-cost, Defendants have no reasonable prospect of recouping their investment and negatively affecting competition because they lack sufficient market power to do so.

Second, Defendants claim affirmative defenses for their pricing structure pursuant to the Nonprofit Institutions Act, 15 U.S.C. § 13c (1994), and the exception for "good faith effort[s] to meet competition" set forth in 15 U.S.C. § 13(b) (1994). For the reasons

---

**11.** Defendants correctly describe Plaintiffs' claim as alleging a "primary line injury." The term "primary-line injury" refers to injury to direct competitors of the discriminating seller. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 220, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). In this case, Plaintiff claims that other photography studios are injured by Defendants' price discrimination. In contrast, "secondary-line injury" is injury to competition among retailers or wholesalers buying from the discriminating seller. *See Jefferson County Pharmaceutical Ass'n. v. Abbott Laboratories,* 460 U.S. 150, 178 n. 6, 103 S.Ct. 1011, 74 L.Ed.2d 882 (1983) (O'Connor, J., dissenting).

stated below, the Court agrees with Defendants that summary judgment on Plaintiffs' price discrimination claim is warranted.

Plaintiffs have not demonstrated a genuine issue of fact as to the first element of a price discrimination claim, that is, whether Defendants' prices are below-cost. There is no dispute that the prices of portraits offered to parents at schools which receive a commission are increased by the amount of the commission.[12] These higher prices accurately reflect the increased cost of servicing these schools. Conversely, the Court finds that the prices of portraits offered for sale to parents whose children are enrolled in schools which do not receive a commission from Defendants are not "below-cost," but rather reflect the lesser cost of servicing those schools. *See Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 230–36 (1st Cir.1983) (finding no antitrust injury where price exceeded cost "however plausibly measured"). Plaintiffs' argument that the commission is illegal and cannot be counted as a cost of production carries no weight in light of the Court's finding above that the commission is not a commercial bribe.

The Court also finds that Plaintiffs have not raised a genuine issue of fact concerning Defendants' ability to recoup their investment and negatively affect competition, the second element of a price discrimination claim. Plaintiffs contend that conflicting testimony of the parties' experts is sufficient to create a genuine issue of fact as to whether Defendants' pricing structure lessened competition. However, Plaintiffs' few citations to the record reveal no evidence concerning "the extent and duration of the alleged predation, the relative financial strength of the predator and its intended victim, and their respective incentives and will" which might raise a genuine issue as to Defendants' ability to drive competitors from the market, nor does the record contain any evidence tending to show Defendants' subsequent ability to recoup their investment in below-cost pricing by raising their prices to supracompetitive levels. *Brooke Group Ltd.*, 509 U.S. at 225, 113 S.Ct. 2578. On the other hand, Defendants have submitted uncontested evidence demonstrating that they do not control a dominant share of the school photography market and that there are relatively few barriers to new entrants to that market. *See Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir.1995) (stating factors necessary to demonstrate market power); *see also Burns v. Cover Studios, Inc.*, 818 F.Supp. 888, 893 n. 9 (noting low barriers to entry in school photography market).

Since Plaintiffs have demonstrated neither that Defendants' non-commission portrait prices are below-cost, nor that Defendants have a reasonable prospect of recouping their investment in below-cost prices and negatively affecting competition, the Court finds that Plaintiffs' price discrimination claim fails as a matter of law. Moreover, for the reasons stated in the Court's discussion of Plaintiffs' commercial bribery claim, the Nonprofit Institutions Act also exempts Defendants from liability for price discrimination.[13] Summary judgment on Count II of Plaintiffs' Complaint is therefore granted.

### 3. 15 U.S.C. § 1—Restraint of Trade

Count III of Plaintiffs' Complaint alleges that Defendants violated 15 U.S.C. § 1 (1994) by contracting and conspiring with schools to which they paid commissions in order to "gain a competitive advantage." (Compl.¶ 21.) The statute provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby

---

12. There also is no question that all schools are offered the same opportunity to designate Defendants as the exclusive providers of student portraits on school grounds in exchange for a commission. Thus, there can be no claim of price discrimination as to the schools to the extent that they are regarded as purchasers.

13. The Court finds it unnecessary to consider Defendants' claim that their pricing structure was merely a "good faith effort to meet competition" pursuant to 15 U.S.C. § 13(b) because it finds Defendants' other arguments dispositive.

declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court. 15 U.S.C. § 1 (1994). Plaintiffs argue that summary judgment on this Count is not appropriate because there are genuine issues of material fact as to the definition of the terms "monopoly" and "market." Specifically, Plaintiffs suggest that a monopoly might exist "within a single school of a few thousand students." (Pls.['] Mot. in Resp. to Def.['s] Mot. for Summ. J. at 17.) As pointed out in *Burns v. Cover Studios, Inc.*, 818 F.Supp. 888 (W.D.Pa.1993), however, a "definition of the relevant market as coextensive with the parties to his competitor's contract is . . . patently invalid because it is tautological." *Id.* at 892 (citing *Town Sound and Custom Tops v. Chrysler Motors Corp.*, 959 F.2d 468, 476 (3rd Cir.1992)). Moreover, since Plaintiffs make absolutely no citation to the record, the Court finds that no genuine issues of fact exist as to the meaning of monopoly, market, or any other matter relevant to Plaintiffs' conspiracy claim. *See* D.Me.R. 56.[14]

Even if the definition of market or monopoly were genuinely in dispute, however, such a dispute is immaterial in light of Plaintiffs' failure to provide any evidence of concerted activity, "an essential element of a Section 1 conspiracy claim." *Burns*, 818 F.Supp. at 893. In *Burns*, a photographer brought suit against a rival photography studio and a school district alleging that they conspired to restrain trade by contracting for the studio to provide all yearbook photos in exchange for the opportunity to sell additional portraits to students. The Court dismissed the claim on the grounds that a contract by itself does not constitute a conspiracy and that the plaintiff had failed to explain "how the con-

tracts operated to restrain trade." *Id.* at 893 (quoting *Stephen Jay Photography, Ltd. v. Olan Mills*, 903 F.2d 988, 995 (4th Cir.1990)). Similarly, in the case at bar, the record indicates only that Defendants entered into a bilateral contract with some schools to provide a commission and certain products in exchange for the exclusive right to take student portraits on school grounds. The Court is not surprised that Plaintiffs point to no evidence demonstrating a conspiracy between Defendants and the schools because it "simply makes no economic sense" for schools to conspire to end competition between studios for the right to take portraits on their property when "logically . . . the schools benefit when photographers aggressively compete for contracts." *Id.* at 994. The Court therefore finds that Count III of Plaintiffs' Complaint warrants summary judgment.

## IV. CLASS CERTIFICATION

In light of the Court's decision to grant summary judgment in favor of Defendants on all Counts of Plaintiffs' Complaint, Plaintiffs' Motion for Class Certification is denied.

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment on all Counts is GRANTED, and Plaintiffs' Cross Motion for Summary Judgment on Count I and Motion for Class Certification are DENIED.

*SO ORDERED.*

---

14. Local Rule 56 provides in relevant part:
    The papers opposing a motion for summary judgment shall be accompanied by a separate, short and concise statement of material facts, supported by appropriate record citations, as to which it is contended that there exist a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party, if supported by appropriate record citations, will be deemed to be admitted unless properly controverted by the statement required to be served by the opposing party. D.Me.R. 56.