USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 99-1126

 SALLY BRIDGES,
 TAMMY BRADY,

 Plaintiffs, Appellants,

 v.

 MACLEAN-STEVENS STUDIOS, INC.,
 LAWRENCE MACLEAN, BLAIR MACLEAN,

 Defendants, Appellees.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Lynch and Lipez, Circuit Judges.

 _____________________

 Jon Holder, with whom Holder & Grover, P.A. was on brief, for
appellants.
 John H. Rich III, with whom David B. McConnell, and Perkins
Thompson Hinckley & Keddy were on brief, for appellees.

 ____________________

 January 6, 2000
 ____________________ TORRUELLA, Chief Judge. This appeal arises from an
antitrust suit involving the school portrait industry. Plaintiff-
appellants are parents of school-age children who attend schools
that have entered into exclusive contracts with MacLean-Stevens
Studios, Inc. Defendant-appellees are MacLean-Stevens Studios,
Inc., a photography studio that services the school portrait
market, and its owners Lawrence and Blair MacLean. Appellants
allege that appellees engaged in commercial bribery in violation of
15 U.S.C. 13(c) (Count I), price discrimination in violation of
15 U.S.C. 13(a) (Count II), and conspiracy to restrain trade in
violation of 15 U.S.C. 1 (Count III). On December 17, 1998 the
district court entered summary judgment for defendant-appellees on
all counts. See Bridges v. MacLean-Stevens Studios, Inc., 35 F.
Supp. 2d 20 (D. Me. 1998). This appeal followed. Having carefully
considered the record and the law, we affirm.
 BACKGROUND
 The facts necessary to decide this case are not in
dispute and were aptly summarized by the district court. Appellee
MacLean-Stevens Studios, Inc. is a New Hampshire corporation that
offers student portrait services in several New England states. 
Appellants are parents of school-age children who attend schools
that have entered into exclusive contracts with MacLean-Stevens. 
These contracts provide that the school will receive a commission
of twenty percent (20%) of the price of the portrait packages sold
and designate MacLean-Stevens as the exclusive provider of
portraits on school property. As a result, the school portraits
purchased by appellants are priced according to a "commission price
list." Prices on the commission price list are generally twenty
percent (20%) higher than portrait prices charged by MacLean-
Stevens for children who attend schools that decline a commission. 
The nature and quality of the pictures are identical regardless of
whether the commission price applies.
 It is the schools' decision to accept or decline a
commission. If a school enters into a contract that provides for
a commission, the commission goes to the school's general fund. If
a school declines the commission, the reduction in costs is passed
on to parents in the form of lower portrait prices. Before 1996,
parents were not informed that the prices on the commission price
list included a commission paid to their children's school. At no
time, however, has a school's contract with MacLean-Stevens
obligated parents to purchase school portraits.
 All schools provide some services to MacLean-Stevens
regardless of whether they accept the commission and designate
MacLean-Stevens as the exclusive portrait provider. These services
include: scheduling photo sessions, providing and arranging space
for the photo sessions, distributing the portrait packages to
students, and collecting payment from students in the elementary
grades. Appellees, in turn, provide yearbook, team, and
identification photos to all schools free of charge. Appellees
also provide each elementary school student with a free class
portrait.
 In the school portrait industry, the practice of entering
into an exclusive dealing contract that provides for a commission
to the school is not unusual. Some of appellees' competitors have
even paid commissions of up to fifty percent (50%). Most of these
contracts, including appellees', are one-year contracts, but some
have a duration of up to three years. During the 1995-1996 school
year, MacLean-Stevens had 159 accounts with schools in Maine, 112
of which accepted a commission and designated MacLean-Stevens as
their exclusive photographer, and 49 of which did not.
 In addition to MacLean-Stevens and other photography
studios that take portraits on school property, numerous businesses
in New England offer portrait services off school grounds. For
example, both Wal-Mart and J.C. Penney have studio photography
services. Appellants are aware of these options and have purchased
portraits of their children from these businesses on several
occasions.
 DISCUSSION
I. Standard of Review
 This Court reviews orders for summary judgment de novo,
construing the record in the light most favorable to the nonmovant
and resolving all reasonable inferences in that party's favor. See
Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184
(1st Cir. 1999) (citing Mullin v. Raytheon Co., 164 F.3d 696, 698
(1st Cir. 1999)). This standard of review does not limit us to the
district court's rationale; in contrast, we may affirm the entry of
summary judgment on "any ground revealed by the record." Id.II. 15 U.S.C. 13(c) - Commercial Bribery
 Appellants contend that the commissions paid by MacLean-
Stevens constitute commercial bribery in violation of 15 U.S.C.
 13(c), commonly known as section 2(c) of the Robinson-Patman Act. 
Appellees counter that (1) appellants do not have antitrust 
standing because they have not suffered an antitrust injury; (2)
commercial bribery is not a cognizable claim under 13(c); (3) the
commissions paid to the schools in this case do not cross the
"seller-buyer line" as required by 13(c); (4) the commissions are
lawful pursuant to the statutory exemption for "services rendered";
and (5) appellees have antitrust immunity under the Nonprofit
Institutions Act, 15 U.S.C. 13c. The district court rejected
appellees' argument that the commissions paid to the schools in
this case were for services rendered, but agreed that the Nonprofit
Institutions Act applied. See Bridges, 35 F. Supp. 2d at 25. The
district court further concluded that even if the Nonprofit
Institution Act were not applicable, appellants could not
demonstrate that the schools acted as the agents of parents with
regard to the purchase of school portraits from MacLean-Stevens. 
See id.
 We agree with the district court that, as to the portrait
sales, the schools are not agents or intermediaries of the parents,
and therefore the commission agreements between MacLean-Stevens and
the schools do not violate section 2(c) of the Robinson-Patman Act. 
Accordingly, the entry of summary judgment for appellees was
proper. We thus need not reach the other arguments addressed by
the district court or raised by appellees.
 Section 2(c) of the Robinson-Patman Act states:
 It shall be unlawful for any person engaged in
 commerce, in the course of such commerce, to
 pay or grant, or to receive or accept,
 anything of value as a commission, brokerage,
 or other compensation, or any allowance or
 discount in lieu thereof, except for services
 rendered in connection with the sale or
 purchase of goods, wares, or merchandise,
 either to the other party to such transaction
 or to an agent, representative, or other
 intermediary therein where such intermediary
 is acting in fact for or in behalf, or is
 subject to the direct or indirect control, of
 any party to such transaction other than the
 person by whom such compensation is so granted
 or paid.

15 U.S.C. 13(c). The Robinson-Patman Act was enacted "to curb
and prohibit all devices by which large buyers gained
discriminatory preferences over smaller ones by virtue of their
greater purchasing power." Federal Trade Comm'n v. Henry Broch &
Co., 363 U.S. 166, 168 (1960). Prior to the statute's enactment in
1936, a congressional inquiry revealed that large buyers and
sellers were circumventing the discriminatory price prohibitions of
the Clayton Act by insisting on indirect price concessions. See
id. at 168-69. The most widely used method for obtaining an
indirect price concession was a "dummy broker." A dummy broker was
a fiction, set up by the buyer, that rendered no services and yet
collected a "brokerage" fee from the seller. The fictitious broker
then paid the fee to its employer, the buyer. See id. at 169.
 Although dummy brokers were the primary target of section
2(c), the Supreme Court has stated that Congress "phrased section
2(c) broadly, not only to cover the other methods then in existence
but all other means by which brokerage could be used to effect
price discrimination." Id. The Court further indicated, in dicta,
that:
 The Report of the House Judiciary Committee
 described the brokerage provision as dealing
 "with the abuse of the brokerage function for
 purposes of oppressive discrimination." And
 although not mentioned in the Committee
 Reports, the debates on the bill show clearly
 that 2(c) was intended to proscribe other
 practices such as the "bribing" of a seller's
 broker by the buyer.

Id. at 169-70 n.6 (citations omitted); see also California Motor
Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 513 (1972)
("bribery of a public purchasing agent" could violate section 2(c))
(dictum). The Senate Report discussing section 2(c) states:
 The relation of the broker to his client is a
 fiduciary one. To collect from a client for
 services rendered in the interest of a party
 adverse to him, is a violation of that
 relationship; and to protect those who deal
 in the streams of commerce against breaches of
 faith in its relations of trust, is to foster
 confidence in its processes and promote its
 wholesomeness and volume.

S. Rep. No. 1502, at 7 (1936).
 Against this background, five circuits have concluded
that commercial bribery is within the ambit of section 2(c). See
Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1274
(9th Cir. 1991); Environmental Tectonics v. W.S. Kirkpatrick, Inc.,
847 F.2d 1052, 1066 (3d Cir. 1988); Grace v. E.J. Kozin Co., 538
F.2d 170, 173 (7th Cir. 1976); Fitch v. Kentucky-Tennessee Light &
Power, 136 F.2d 12, 15-16 (6th Cir. 1943). Other courts, however,
have expressed their doubts. See Seaboard Supply Co. v. Congoleum
Corp., 770 F.2d 367, 371-72 (3d Cir. 1985); Excel Handbag Co. v.
Edison Bros. Stores, 630 F.2d 379, 387 (5th Cir. 1980). For
purposes of this appeal, we assume, without deciding, that
commercial bribery is actionable under section 2(c). Nevertheless,
appellants' claim still fails.
 Appellants argue that the commissions paid by MacLean-
Stevens to the schools on the profit from portrait sales violate
section 2(c). In order to find a violation of section 2(c), "the
payments involved must be made to a party to the transaction or to
someone connected with that party in an agency, representative, or
intermediary relationship." Ragen, Inc. v. Sterling Nelson & Sons,
Inc., 351 F.2d 851, 862 (9th Cir. 1965). In other words, the
payments must cross the "seller-buyer line." Seaboard Supply Co.,
770 F.2d at 372 ("In the appellate decisions which have found
commercial bribery within the ambit of section 2(c) the common
thread has been the passing of illegal payments from the seller to
buyer or vise versa."). The Third Circuit explained, "Congress
intended that legitimate brokerage relationships not be affected,"
and therefore liability may only be imposed "when the seller-buyer
line has been passed." 770 F.2d at 372.
 Where a transaction involves a seller, buyer, and a third
party, the seller-buyer line is crossed if the seller or buyer pays
a commission to a third party acting as the agent or intermediary
of the opposing party. Here, appellants allege that the seller-
buyer line was crossed because the schools acted as intermediaries
on behalf of the parents when they contracted with MacLean-Stevens
for school portrait services. This argument was considered and
rejected by the Fourth Circuit in Stephen Jay Photography, Ltd. v.
Olan Mills, Inc., 903 F.2d 988, 991 (1990).
 In Stephen Jay Photography, the court was required to
determine if commercial photographers violated the Robinson-Patman
Act by paying commissions to schools on the profit from portrait
packages sold to parents. The critical inquiry, the court stated,
was "whether, as a matter of law, the payments made from appellees
to the schools from profits on portrait sales crossed the seller-
buyer line." Id. at 992. The court concluded that the seller-
buyer line had not been crossed because "circuit court cases
finding commercial bribery in violation of section 2(c) all involve
the corruption of an agency or employment relationship." Id. at
993 (citing Grace, 538 F.2d 170; Ragen, 351 F.2d 851; Fitch, 136
F.2d 12). The facts before the court did not meet this test.
 [T]he relationship between the students and
 the schools does not rise to one akin to that
 of agency or employment. Without such a
 relationship to connect the students'
 purchasing decisions to the schools, the
 payments from the appellees to the schools do
 not cross the seller-buyer line.

Id. In reaching this result, the court acknowledged that:
 Unquestionably, the schools and the students
 enjoy a special relationship of trust. And it
 is true that the schools arranged to have
 yearbook photographs taken by appellees and
 encouraged students to purchase portraits from
 them. However, letters encouraging the
 students to purchase these photographs either
 expressly or implicitly indicated that their
 decision to purchase portraits was optional. 
 From this correspondence it is abundantly
 clear that the schools did not assume a
 position resembling that of a portrait
 purchasing agent for the students. 

Id.
 The core facts of this case are identical to those in
Stephen Jay Photography. There, as here, "the schools did not have
the authority to bind the [parents] to purchase portraits. Instead
[parents] were free to purchase portraits from appellees or from a
photographer of their choice, or to purchase no portraits from
anyone." Id. Because the schools had no control over the parents'
purchasing decisions, the agency or employment relationship
required by section 2(c) is lacking. Id.; see also Harris, 940
F.2d at 1275; Environmental Tectonics, 847 F.2d at 1066; Grace, 538
F.2d at 171-73; Ragen, 351 F.2d at 853-58; Fitch, 136 F.2d at 15-
16; Pharmacare v. Caremark, 965 F. Supp. 1411, 1424-25 (D. Haw.
1996); Edison Elec. Inst. v. Henwood, 832 F. Supp. 413, 414-19
(D.D.C. 1993).
 We need look no further than Stephen Jay Photography to
affirm the entry of summary judgment on this issue. Nonetheless,
we find additional support for our decision in Harris v. Duty Free
Shoppers Ltd. Partnership, 940 F.2d 1272, 1275 (9th Cir. 1991). In
Harris, the owner of a duty free shop, Peter Harris, filed a
section 2(c) claim for commercial bribery against his competitor
Duty Free Shoppers. The facts in the case were not in dispute. 
Duty Free Shoppers paid commissions to tour companies and tour
guides to promote its shop with tourists by (1) scheduling stops of
tour buses at the store; (2) supplying the store with advance
information about the number and characteristics of tour groups
that were stopping; (3) distributing promotional materials to the
tourists; (4) assisting the tourists in ordering items; and (5)
explaining the regulations covering duty free merchandise to the
tourists. Harris, in contrast, did not engage in this practice. 
The district court granted summary judgment in favor of Duty Free
Shoppers, and the Ninth Circuit affirmed.
 On appeal, Harris argued that the district court erred
because there was clearly a fiduciary duty between tour guides and
tourists. The court agreed that section 2(c) "encompasses cases of
commercial bribery tending to undermine the fiduciary relationship
between a buyer and its agent, representative, or other
intermediary," id. at 1274 (citing Ragen, 351 F.2d at 858), but
concluded that the facts did not indicate that section 2(c) had
been violated.
 [T]he tour guides and tourists are not in an
 employment relationship; the tour guides are
 not shopping experts; and they are not at all
 times subject to the control of the tourists. 
 Moreover, the tourists are free to purchase
 their souvenirs and gift items anywhere; in
 fact, they are free not to purchase at all. 
 On these facts, we hold that tour guides and
 tour operators are not in an agency or
 fiduciary relationship with their passengers,
 nor do they serve as intermediaries subject to
 the direct or indirect control of those
 passengers, with regard to the transactions in
 question -- the purchase of Duty Free's retail
 goods.

Id. at 1275 (internal quotations omitted). In rejecting Harris'
claim that there was a fiduciary duty between tour guides and
tourists, the court emphasized that its inquiry was limited to the
transaction in question.
 In addressing whether the payments involved
 were made to a party to the transaction or to
 someone connected with that party in an
 agency, and thus fiduciary relationship, . . .
 "[r]eference must be made to the transactions
 in question to determine whether or not the
 necessary relationship exists."

Id. (quoting Ragen, 351 F.2d at 862).
 Here, as in Harris, appellants urge the court to consider
the parties' relationship generally, rather than have the court
examine the "transactions in question." Id. We decline to do so. 
Accordingly, we have no problem rejecting appellants' argument that
the schools in this case are subject to the indirect control of
"named plaintiffs in particular and the parents in general." While
appellants' proposition may be true in some general sense, the only
relevant transaction is the sale and purchase of school portraits. 
As to this limited transaction, the record is clear that the
schools are not in an agency or fiduciary relationship with the
parents, nor do they serve as intermediaries subject to the "direct
or indirect control" of the parents. Therefore, summary judgment
on this claim was proper.
III. 15 U.S.C. 13(a) - Price Discrimination
 MacLean-Stevens offers its school portrait packages
according to two separate price lists. A commission price list
applies where a school elects to receive a commission. In all
other cases, a less expensive, non-commission price list is
offered. Count II of appellants' amended complaint alleges that
this dual pricing structure constitutes price discrimination in
violation of 15 U.S.C. 13(a). The statute states:
 It shall be unlawful for any person engaged in
 commerce, in the course of such commerce,
 either directly or indirectly, to discriminate
 in price between different purchasers of
 commodities of like grade and quality, where
 either or any of the purchases involved in
 such discrimination are in commerce, where
 such commodities are sold for use,
 consumption, or resale within the United
 States . . . and where the effect of such
 discrimination may be substantially to lessen 
 competition or tend to create a monopoly in
 any line of commerce, or to injure, destroy,
 or prevent competition with any person who
 either grants or knowingly receives the
 benefit of such discrimination, or with
 customers of either of them: Provided, That
 nothing herein contained shall prevent
 differentials which make only due allowance
 for differences in the cost of manufacture,
 sale, or delivery resulting from the differing
 methods or quantities in which such
 commodities are to such purchasers sold or
 delivered . . . . 

15 U.S.C. 13(a).

 The Supreme Court has held that there are two
prerequisites to recovery under 15 U.S.C. 13(a). See Brooke
Group, Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222-
24 (1993). First, the prices complained of must be below an
appropriate measure of the defendant's costs. See id. Second, the
defendant must have a reasonable prospect of recouping its
investment in below-cost prices. See id. In this case, the
district court concluded that appellants had failed to raise a
genuine issue of fact as to either requirement. See Bridges, 35 F.
Supp. 2d at 28. We agree.
 First, there is no evidence in the record that appellees
offer portrait packages at below cost. As the district court
accurately concluded, appellees' dual pricing structure is the
result of a difference in market costs. Where a school elects to
receive a commission, the prices of portraits are increased by the
additional cost of the commission. Where, however, a school
declines the commission, the lower price of portraits reflects a
decrease in the cost of production. Accordingly, the prices
complained of are not below "an appropriate measure of the
defendant's costs." See Brooke Group, 509 U.S. at 222-24; see also
Barry Wright Corp. v. ITT Grinnell Corp., 724 F.2d 227, 230-36 (1st
Cir. 1983) (holding Sherman Act does not prohibit prices that
exceed both incremental and average costs).
 Second, even accepting appellants' argument that the non-
commission portrait packages are below cost, appellants cannot
demonstrate that MacLean-Stevens has a reasonable prospect of
recouping any investment in below-cost prices. The Supreme Court
has stated:
 Determining whether recoupment of predatory
 losses is likely requires an estimate of the
 cost of the alleged predation and a close
 analysis of both the scheme alleged by the
 plaintiff and the structure and conditions of
 the relevant market. If market circumstances
 or deficiencies in proof would bar a
 reasonable jury from finding that the scheme
 alleged would likely result in sustained
 supracompetitive pricing, the plaintiff's case
 has failed.

Brooke Group, 509 U.S. at 226 (citation omitted). Therefore,
"where the market is highly diffuse and competitive, or where new
entry is easy . . . summary disposition of the case is
appropriate." Id. Here, the record indicates that (1) MacLean-
Stevens does not control a dominant share of the school photography
market and (2) there are relatively few barriers to entry in that
market. Conversely, there is no indication in the record that
MacLean-Steven could maintain supracompetitive prices. 
Accordingly, appellants' price discrimination claim fails as a
matter of law.
IV. 15 U.S.C. 1 - Restraint of Trade
 Count III of appellants' complaint alleges a
"conspirac[y] between the [appellees] and the schools to engage in
the form of commercial bribery described herein in order to gain a
competitive edge" in violation of 15 U.S.C. 1. The statute
states: "Every contract, combination in the form of trust or
otherwise, or conspiracy, in restraint of trade or commerce among
the several States, or with foreign nations, is hereby declared to
be illegal." 15 U.S.C. 1.
 Appellants have provided the Court with no citations and
little argument in support of this claim. The district court, for
its part, concluded that Count III is contrary to both law and
logic. See Bridges, 35 F. Supp. at 29. Once again, we agree.
 First, appellants offer no evidence of a conspiracy other
than the exclusive contracts between MacLean-Stevens and the
schools. As a matter of law, a contract by itself does not
constitute a conspiracy. See Stephen Jay Photography, 903 F.2d at
995; Burns v. Cover Studios, Inc., 818 F. Supp. 888, 893 (W.D. Pa.
1993). Therefore, without at least some explanation of "how the
contracts operated to restrain trade," Stephen Jay Photography, 903
F.2d at 995, appellants cannot prevail on a section 1 conspiracy
claim. Second, appellants have offered no evidence of any
concerted activity, "an essential element of a section 1 claim." 
Id. at 994. Third, we note that there is no evidence in the record
that the exclusive contracts between MacLean-Stevens and the
schools have an anticompetitive effect or foreclose a substantial
percentage of the school portrait market. See U.S. Healthcare,
Inc. v. Healthsource, Inc., 986 F.2d 589, 595 (1st Cir. 1993).
 Finally, the Supreme Court has stated "if the factual
context renders respondents' claim implausible - if the claim is
one that simply makes no economic sense - respondents must come
forward with more persuasive evidence to support their claim than
would otherwise be necessary." Matsushita Elec. Indus. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986). Here, we find that
appellants' section 1 claim is illogical. As the Fourth Circuit
stated in Stephen Jay Photography, "appellants have articulated no
motive the schools might have to engage in such a conspiracy. 
Indeed, logically the converse is true because the schools benefit
when photographers aggressively compete for contracts." 903 F.2d
at 994. Accordingly, summary judgment on this claim was proper.
 CONCLUSION
 For the reasons stated above, we affirm the judgment of
the district court.